## The STATE ex rel. The CINCINNATI ENQUIRER

v.

## DUPUIS et al.*

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–020179.

Decided June 14, 2002.

---

* Reporter's Note: An appeal to the Supreme Court of Ohio is pending in case No. 2002-1038.

Graydon, Head & Ritchey, John C. Greiner and John A. Flanagan, for relator.

Fay D. Dupuis, Cincinnati City Solicitor, and Richard Ganulin, Assistant City Solicitor, for respondents.

HILDEBRANDT, Judge.

{¶ 1} This is an original action in mandamus. Relator, The Cincinnati Enquirer, seeks a writ of mandamus ordering the respondents, Fay D. Dupuis [1] and the city of Cincinnati, to produce a proposed settlement agreement tendered to the city by the United States Department of Justice. For the following reasons, we decline to issue the writ.

{¶ 2} In April 2001, the Department of Justice initiated an investigation of alleged "patterns and practices" of the city's police division. On March 7, 2002, an Enquirer reporter learned that the city had received a proposed settlement from the Department of Justice. The purpose of the proposed agreement was to

---

1. Dupuis is the City Solicitor for Cincinnati and is responsible for the custody of certain records pertaining to the city's legal matters.

resolve the issues raised in the investigation. The reporter requested a copy of the proposed agreement from a deputy city solicitor, who declined the request. The Enquirer then filed this mandamus action, contending that the city has a duty to produce the document pursuant to the Ohio Public Records Act, R.C. 149.43.

{¶ 3} We begin with the proposition that any record that is kept by a governmental unit must be made available for inspection to any member of the general public, unless the record is exempt from disclosure by state or federal law.[2] When a governmental unit refuses to release a record, it bears the burden of demonstrating that the record is exempt from disclosure under one of the exceptions enumerated in R.C. 149.43 or in another state or federal law.[3] The exceptions from disclosure are to be narrowly construed, and all doubts are to be resolved in favor of disclosure.[4]

{¶ 4} In the instant case, the city argues that the proposed settlement agreement reflects the negotiations of parties to potential litigation and therefore falls within the "trial preparation record" exception under R.C. 149.43(A)(4). "Trial preparation record" is defined under that provision as "any record that contains information that is specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding, including the independent thought processes and personal trial preparation of an attorney." We agree that this exception applies.

{¶ 5} In delineating the boundaries of the trial-preparation-record exception, the courts have distinguished between executed settlement agreements, which are subject to disclosure, and records of negotiations, which are not. The Eighth Appellate District has explained the distinction by stating that "[a] settlement agreement is a contract negotiated with the opposing party to prevent or conclude litigation. Consequently, although the parties and their attorneys subjectively evaluated the litigation confronting them in order to reach a settlement, the settlement agreement itself contains only the result of the negotiation process and not the bargaining discourse which took place between the parties in achieving the settlement."[5]

---

2. See *State ex rel. Kinsley v. Berea Bd. of Edn.* (1990), 64 Ohio App.3d 659, 662, 582 N.E.2d 653. It is undisputed that a mandamus action is the proper remedy for an alleged failure to comply with R.C. 149.43. See 149.43(C).

3. See *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1988), 38 Ohio St.3d 79, 526 N.E.2d 786, paragraph two of the syllabus.

4. See id. at 84, 526 N.E.2d 786.

5. *Kinsley,* supra, at 663, 582 N.E.2d 653.

{¶ 6} The Supreme Court of Ohio cited the *Kinsley* court's reasoning with approval in *State ex rel. Findlay Publishing Co. v. Hancock Cty. Bd. of Commrs.*[6] In discussing the relationship between R.C. 149.43 and Ohio's Sunshine Law, R.C. 121.22, the court recognized that a governmental body has the right to privately discuss litigation, and that the private nature of such discussion ends only when "a conclusion is reached regarding pending or imminent litigation."[7] The *Findlay* court then held that because the document in question was an executed settlement agreement, it was subject to disclosure under R.C. 149.43.[8]

{¶ 7} In the case at bar, the document in question reflects the negotiations between the city and the Department of Justice, and not the final resolution of pending or imminent litigation. The stipulated facts filed with this court indicate that the proposed settlement has not been ratified by the city. Indeed, there is no indication in the record that city council has deliberated upon the proposal or had even seen it at the time the Enquirer requested its release. Thus, the city has established that the document contains the confidential negotiations of the parties' attorneys and does not memorialize an adopted policy or decision of the governmental body.

■ {¶ 8} We are mindful of the Enquirer's argument that the proposed settlement agreement was not prepared by the city, but we do not regard this circumstance to be dispositive. As the courts in *Kinsley* and *Findlay* implicitly stated, it is the content, not the author, of the document, that determines the applicability of the trial-preparation-record exception. Therefore, even if the document is prepared by the party opposing the governmental unit against whom mandamus is sought, it may nonetheless indicate the "bargaining discourse which took place between the parties," and, as such, it is entitled to protection from disclosure.[9] Here, the stipulated facts indicate that the document in question does contain such protected material, and we hold that it is not subject to release as a public record.

{¶ 9} Moreover, we find distinguishable the cases cited by the Enquirer for the proposition that even "draft" or tentative agreements are subject to disclosure under R.C. 149.43. In both *State ex rel. Calvary v. Upper Arlington*[10] and

---

6.  (1997), 80 Ohio St.3d 134, 684 N.E.2d 1222.

7.  Id. at 138, 684 N.E.2d 1222.

8.  Id.

9.  See *Kinsley,* supra, at 663, 582 N.E.2d 653.

10.  (2000), 89 Ohio St.3d 229, 729 N.E.2d 1182.

*Beacon Publishing Co. v. Stow,*[11] the Supreme Court of Ohio held that the governmental bodies were required to release tentative labor agreements. Here, the settlement proposal does not reflect a tentative agreement, but merely a step in the negotiation process between the parties. As we have already noted, the legislative authority of the city has not ratified or even considered the document in the instant case, and the document, accordingly, cannot be deemed to reflect the "organization, functions, policies, decisions, procedures, operations, or other activities" of the city within the meaning of R.C. 149.011(G).[12] Therefore, the cases cited by the Enquirer are inapposite.

{¶ 10} For the foregoing reasons, we deny the Enquirer's petition for a writ of mandamus. Further, because we find the petition to be without merit, we deny the Enquirer's demand for attorney fees.

Writ denied.

SUNDERMANN, J., concurs.

PAINTER, P.J., dissents.

PAINTER, Presiding Judge, dissenting.

{¶ 11} I must respectfully dissent—not because the outcome is not a desirable result, but because it is contrary to the governing statute.

{¶ 12} It is true that the courts have, for good reason, traditionally favored negotiated settlements to litigation. It is also true that negotiations are more likely to lead to a settlement if conducted privately, without interference from aggravating outside influences. From this perspective, the majority has arguably adopted the desirable social policy by holding that which is characterized as a draft settlement agreement need not be disclosed to the public. But, in this instance, what may be the desirable result from a policy perspective is simply not the law that the legislature has enacted.

{¶ 13} The statute requires that public records—defined as any record kept by any public office—must be made available to the public upon request.[13] A record is further defined to include "any document * * * received by * * * any public office * * * which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office."[14] But these

---

11.  (1986), 25 Ohio St.3d 347, 25 OBR 399, 496 N.E.2d 908.

12.  See *Calvary,* supra, at 232, 729 N.E.2d 1182.

13.  R.C. 149.43.

14.  See R.C. 149.011(G).

expansive definitions are limited by twenty-two exceptions.[15] As the majority implicitly acknowledges, there is no exception that explicitly exempts draft settlement agreements from public disclosure. This is significant.

{¶ 14} Other states' legislatures that have prohibited the disclosure of draft settlement agreements have done so explicitly.[16] And our own legislature knows how to draft such explicit exceptions, because it has specifically exempted collective-bargaining negotiations from the disclosure otherwise required by Ohio's Sunshine Law.[17] The absence of such an explicit exception, coupled with the requirement, as acknowledged by the majority, that exceptions to public disclosure are to be narrowly construed, with all doubts resolved in favor of disclosure,[18] mandates disclosure here.

{¶ 15} The majority also implicitly acknowledges that there is no Ohio authority controlling today's decision. They rely on dicta from opinions holding that final settlement agreements must be disclosed,[19] even if the parties have agreed to keep the terms confidential.[20] In so doing, the majority has shoehorned the facts of this case into the trial-preparation-record exception, which exempts from disclosure "any record that contains information that is specifically compiled in reasonable anticipation of * * * a civil or criminal action or proceeding."[21]

{¶ 16} But one of the cases the majority cites also notes that "[a] settlement agreement is not a record compiled in anticipation of or in defense of a lawsuit. It simply does not prepare one for trial. A settlement agreement is a contract negotiated with the opposing party to prevent or conclude litigation."[22] Because final settlement agreements must generally be disclosed, and, as the majority

---

15. See R.C. 149.43(A)(1)(a) through (v).

16. See, e.g., Tex.Govt.Code Ann. 552.103 (Exception: Litigation or Settlement Negotiations Involving the State); Cal.Govt.Code Ann. 6254(a) (preliminary drafts, notes or memoranda); Mo.Ann. Stat. 610.021(1) (litigation matters made public only upon final disposition). Wis. Stat.Ann. 19.32(2) (public records do not include drafts).

17. See R.C. 121.22.

18. See *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1988), 38 Ohio St.3d 79, 526 N.E.2d 786, paragraph two of the syllabus.

19. See *State ex rel. Kinsley v. Berea Bd. of Edn.* (1990), 64 Ohio App.3d 659, 582 N.E.2d 653.

20. See *State ex rel. Findlay Publishing Co. v. Hancock Cty. Bd. of Commrs.* (1997), 80 Ohio St.3d 134, 684 N.E.2d 1222.

21. See R.C. 149.43(A)(4).

22. See *Kinsley*, supra, at 663, 582 N.E.2d 653. See, also, *Dutton v. Guste* (La.1981), 395 So.2d 683, 685.

concedes, draft agreements must generally be disclosed,[23] I would hold that draft settlement agreements must also generally be disclosed once they are received by the city.[24]

{¶ 17} Finally, it is important to note that when a unit of the government refuses to release records, it bears the burden of proving that the records are exempt from disclosure.[25] The stipulated record reflects only that the Department of Justice had conducted an investigation into alleged patterns and practices of the Cincinnati Police Department and forwarded a "proposed settlement agreement." That is the extent of the record. It contains nothing about the contents of the proposal, the impetus for the investigation, or what the city has done with the document. Thus we should not assume that the document was prepared in reasonable anticipation of legal action, since investigative materials are often prepared to determine what has occurred, not necessarily in anticipation of litigation.[26] In sum, the city has failed to meet its burden of proof.

{¶ 18} Though well meaning, the majority's decision misinterprets the law. If the law should be changed, the legislature should change it—we may not do so by judicial fiat. The Enquirer's writ should be granted.

---

**23.** See *State ex rel. Calvary v. Upper Arlington* (2000), 89 Ohio St.3d 229, 232, 729 N.E.2d 1182.

**24.** See *Times Publishing Co. v. St. Petersburg* (Fla.2d App. 1990), 558 So.2d 487, 494.

**25.** See *State ex rel. Natl. Broadcasting Co. v. Cleveland,* supra.

**26.** See *State ex rel. Ohio Patrolmen's Benevolent Assn. v. Mentor* (2000), 89 Ohio St.3d 440, 445, 732 N.E.2d 969.